# NO. 12-14-00116-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSE DIAS PEREZ,*<br>*APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jose Dias Perez appeals his conviction for murder, for which he was sentenced to imprisonment for fifty years. Appellant raises six issues challenging the trial court's admission of certain evidence, its failure to excuse a juror from service, and the sufficiency of the evidence. We affirm.

### BACKGROUND

Appellant was charged by indictment with murder. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Appellant had known the victim, Martha Caselin Ramirez, for about fifteen years. The two dated for about eight months and lived together for a few months prior to the offense. About two weeks prior to the offense, Ramirez moved out of Appellant's house. One night, Appellant came to Ramirez's home. He remained in his pickup while Ramirez's son went to get her. Ramirez got into Appellant's pickup with him and they talked. At some point, Appellant retrieved a .9 millimeter handgun from inside the vehicle and fired three shots, two of which hit and fatally wounded Ramirez. Appellant drove across town to his land with Ramirez's body still in the vehicle. Shortly thereafter, he called 911 and reported the incident.

Ultimately, the jury found Appellant "guilty" of murder and assessed his punishment at imprisonment for fifty years. This appeal followed.

**ADMISSIBILITY OF EVIDENCE**

In his first, second, and third issues, and part of his sixth issue, Appellant complains about the admissibility of a handwritten note, his statements to a detective and a jailer, and extraneous offense evidence.

**Standard of Review and Applicable Law**

Generally, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

**Appellant's Handwritten Note**

After Appellant's arrest, a search warrant was issued for officers to search for certain items at his home, including firearms, ammunition, firearm magazines, firearm cleaning kits, items with possible blood evidence on them, and items belonging to Ramirez. While searching for these items, officers saw a notepad on the kitchen table. The notepad was opened to a note written in Spanish and apparently signed by Appellant. A Spanish speaking officer was called to the scene to translate the note. The translation reads, "Ok I want to make a testament. I leave everything to my daughters. They deserve my house, my land, and everything I have. Now I'm leaving, but I'm taking someone with me. Signed Jose Perez." The officers decided that the note appeared to be related to the offense they were investigating and seized it as evidence.

At a pretrial suppression hearing, Appellant argued that the note was inadmissible because it was not and could not have been included in a valid search warrant. Appellant contended that the note was a "personal writing" within the meaning of Article 18.02(10) of the code of criminal procedure. This provision reads, "A search warrant may be issued to search for and seize . . . property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person

2

committed an offense." *See* TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (West Supp. 2014). The State argued that the note was not a personal writing within the meaning of Article 18.02(10). The State further contended that the note was admissible even though it was not listed in the search warrant because it was found in plain view. The trial court denied the motion to suppress. At trial, Appellant renewed his objection when the note was offered as evidence, and the trial court overruled the objection.

In his first issue, Appellant reasserts his position that the note was a personal writing within the meaning of Article 18.02(10). The State argues that regardless of whether the note is a personal writing, Article 18.02(10) does not apply. We agree. Article 18.02 governs the items for which a search warrant may be issued. Here, the search warrant was not issued for Appellant's note. Therefore, Article 18.02(10) does not apply. *See Reeves v. State*, 969 S.W.2d 471, 486 (Tex. App.—Waco 1998, pet. ref'd).

Appellant further argues that the note was not admissible under the plain view exception to the search warrant requirement because the officers could not have entered the home had it not been for the issuance of the search warrant. However, in the course of a good faith search conducted within the parameters of a search warrant, an officer may sometimes seize objects that are not particularly described in the search warrant. *Bower v. State*, 769 S.W.2d 887, 906 (Tex. Crim. App. 1989); *see also Reeves*, 969 S.W.2d at 486. An officer may seize such objects if he has a reasonable basis at the time of the seizure for drawing a connection between the objects and the offense that furnished the basis for the search warrant. *Id.*

Here, there is no dispute that the note was discovered and seized in the course of a good faith search conducted within the parameters of a valid search warrant. *See id.* Furthermore, the officers had a reasonable basis at the time of the seizure for drawing a connection between the note and the murder. *See id.* We conclude that the trial court did not abuse its discretion by admitting the note into evidence. *See id.* Accordingly, we overrule Appellant's first issue.

**Appellant's Statement to Detective Battley**

After Appellant called 911, he told the 911 operator that he would meet the police at his house. When Appellant arrived at his house, police officers handcuffed him and read him his rights. The reading of his rights was captured by the recording equipment of one of the police vehicles. Appellant then led the officers to Ramirez's body. At the scene, Detective Gina Battley interviewed Appellant. Before questioning Appellant, Detective Battley asked if he had

been read his rights and understood them, and he said that he did. Appellant told Detective Battley that he had gone to Ramirez's home that night to talk. He stated that Ramirez was upset because he had been drinking. Ramirez went inside the house and came back to his pickup with something in her hand. He thought it was a weapon, so he took his gun and fired three times at her. He believed that two of the shots hit Ramirez.

In his second issue, Appellant argues that his statement to Detective Battley is inadmissible because it was involuntarily given. He contends that the statement was involuntary because he was intoxicated and in pain from the handcuffs when he waived his rights and gave the statement. Evidence as to both of these factors was presented during a pretrial hearing on Appellant's motion to suppress the statement.

The determination of whether a confession is voluntary must be based on an examination of the totality of the circumstances surrounding its acquisition. *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985). Relevant circumstances to determine if a defendant's will has been overborne include length of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality. *Id.*

Intoxication, while relevant to the issue, does not automatically render a confession involuntary. *Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988). The central question is the extent to which the person was deprived of his faculties due to the intoxication. *Id.* If the person's intoxication rendered him incapable of making an independent, informed choice of free will, then his confession was given involuntarily. *Id.*

A recording of the interview was played at the suppression hearing. At the beginning of the recording, Appellant asked for his handcuffs to be loosened. Within a very short time, Detective Battley had another officer loosen Appellant's handcuffs. Detective Battley testified that during her interview of Appellant, he smelled like alcohol, had somewhat slurred speech, and told her that he had been drinking. She believed Appellant was "somewhat intoxicated" but was able to communicate. Nothing in the recording or the testimony indicates that Appellant's will was overborne. Based on the totality of the circumstances, we conclude that the trial court did not abuse its discretion by finding that Appellant's statement was voluntarily given.

4

Appellant further argues that his statement to Detective Battley is inadmissible under Article 38.22, Subsections 3(a)(2) and 3(a)(4) of the code of criminal procedure. These subsections read as follows:

> (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
> . . . .
> (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;
> . . . .
> (4) [and] all voices on the recording are identified.

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(2), (a)(4) (West Supp. 2014).

The State argues that even though the statement was not obtained in full compliance with Subsection 3(a), it is nonetheless admissible under Subsection 3(c) of the same article. That subsection reads as follows:

> Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(c) (West Supp. 2014). Under the exception set out in Subsection 3(c), oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if, at the time they were made, they contained assertions unknown by law enforcement but later corroborated. **Woods v. State**, 152 S.W.3d 105, 117 (Tex. Crim. App. 2004). Such oral statements need only circumstantially demonstrate the defendant's guilt. **Id.** If even a single assertion of fact in such an oral statement is found to be true and conducive to establishing the defendant's guilt, then the statement is admissible in its entirety. **Id.**

Here, Detective Battley testified that Appellant's assertions during the interview that the shooting occurred inside his pickup, that it occurred at Ramirez's residence, that Ramirez was in the passenger seat at the time it occurred, and that Appellant fired the gun three times and hit Ramirez twice were unknown at the time of the interview. Detective Battley further testified that all of these assertions were later determined to be true. We conclude that although Appellant's statement was not taken in strict compliance with Subsection 3(a), the State established an

5

exception under Subsection 3(c). Therefore, the trial court did not err in admitting the statement. Accordingly, we overrule Appellant's second issue.

**Appellant's Statement to Jailer**

When Appellant was booked into jail for Ramirez's murder, the jailer who booked him in asked him the questions that she was trained to ask, including, "Do you know why you're here and where you're at?" The jailer testified that the purpose of those questions is to determine whether the person is too intoxicated or otherwise unable to complete the booking process. When the jailer asked Appellant, "Do you know why you're here," he responded that he had killed his girlfriend because she was performing witchcraft on him. He continued talking, unprovoked, and stated that his girlfriend shot at him and he shot her twice. The jailer proceeded to ask the rest of the normal booking questions.

In his third issue, Appellant argues that his statements to the jailer are inadmissible because they are products of a custodial interrogation without the provision of *Miranda*[1] warnings. "Interrogation" refers to (1) express questioning and (2) any words or actions of the police, other than those normally attendant to arrest and custody, that police should know are reasonably likely to elicit an incriminating response from the suspect. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)). Routine booking questions, because they are "normally attendant to arrest and custody," are a recognized exception to *Miranda*. *Alford*, 358 S.W.3d at 654. To fall within the exception's parameters, a routine booking question must be reasonably related to a legitimate administrative concern. *Id.* at 659-60. Questions such as a defendant's name, address, height, weight, eye color, date of birth, age, place of employment, and physical disabilities have been accepted as falling within the exception's parameters. *Id.* at 654-55. Questions such as where the defendant was going when he was pulled over, when and what he had last eaten, and whether he had consumed alcohol have not. *Id.* at 655.

A trial court must examine whether, under the totality of the circumstances, a question is reasonably related to a legitimate administrative concern. *Id.* at 661. Whether a question reasonably relates to an administrative concern must be ascertained by both the content of the question and the circumstances in which the question is asked. *State v. Cruz*, No. PD-0082-14, 2015 WL 2236982, at *7 (Tex. Crim. App. May 13, 2015). An appellate court generally reviews

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

de novo the objective reasonableness of a question's stated administrative purpose, but defers to the trial court's resolution of disputed facts. *Alford*, 358 S.W.3d at 661.

The jailer in this case testified that she routinely asked prisoners at the beginning of the booking process whether they knew where they were and why they were there. She stated that the purpose of these questions was to make sure the prisoners knew why they were there and were not too intoxicated to continue the booking process. The jailer testified that when she was booking Appellant, she first asked his name and then whether he knew why he was there. She was particularly interested in Appellant's answer to the latter question because she smelled alcohol on him. After Appellant answered the question, the jailer finished booking him and returned him to his cell. The jailer testified that she had no intent to elicit incriminating information when she asked the question.

Just as the government has a legitimate administrative interest in asking a defendant questions such as his name, address, and physical disabilities, it also has an interest in determining whether the defendant is competent to answer such questions before asking them. The question "Do you know why you're here?" does not require an incriminating response. A defendant could easily answer "yes," "no," or "I was arrested for [a particular offense]." Based on the totality of the circumstances, including both the content of the question and the circumstances in which it was asked, we conclude that the question had a legitimate administrative purpose. *See Alford*, 358 S.W.3d at 661; *Cruz*, 2015 WL 2236982, at *7. Therefore, the trial court did not err in admitting Appellant's statements under the booking question exception to *Miranda*. Accordingly, we overrule Appellant's third issue.

**Extraneous Offense Evidence**

In Appellant's case in chief, he took the stand and testified that the shooting of Ramirez was accidental. In the State's rebuttal case, it offered evidence of an extraneous offense to rebut Appellant's claim that Ramirez's shooting was accidental. In January 1986, Appellant was married to Barbara Ward. The two had been separated for approximately two months, and Ward was living with her parents. Appellant went to the house one night and remained in the car. A family member told Ward that Appellant was there and wanted to talk. Ward went outside and leaned into the car window to talk to Appellant. At one point, she turned her head to look at something and Appellant shot her in the face. Ward looked back at Appellant and he shot her two more times in the arm and shoulder. She ran as far as she could before falling. After firing

7

six shots, Appellant drove away. Ward survived the wounds and later filed an affidavit of nonprosecution. The charges against Appellant were dismissed.

As part of his sixth issue, Appellant argues that the trial court erred by admitting the extraneous offense evidence because it lacked the required similarities and was too remote in time to be admissible under Rule 404(b). Generally, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *See* TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* ***id.***

When a defendant claims his act was free from criminal intent, extraneous offenses may be relevant to prove such intent. ***Plante v. State***, 692 S.W.2d 487, 491-92 (Tex. Crim. App. 1985). To be admissible to negate the possibility of accident, the extraneous offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play. ***Cantrell v. State***, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987). The degree of similarity required in cases where intent is the material issue is not, however, as great as in cases where identity is the material issue and extraneous offenses are offered to prove modus operandi. ***Id.***

In this case, the mode of committing the offenses and the circumstances surrounding the offenses are sufficiently similar for the extraneous offense to be relevant to intent. The primary and extraneous offenses were similar in that (1) the victims were women who had been in relationships with Appellant; (2) both victims had recently left Appellant; (3) Appellant arrived at the victims' homes at night, remained in his vehicle, and asked family members to go and get the victims; (4) Appellant asked both victims to come back to him; (5) Appellant shot both victims multiple times with a handgun; and (6) Appellant claimed that both shootings were accidental. We conclude that Ward's shooting is sufficiently similar in nature to Ramirez's shooting that the inference of improbability of accident logically comes into play. Therefore, the evidence of Ward's shooting was admissible to negate the possibility that Ramirez's shooting was an accident. *See* ***id.***

At trial, Appellant argued that admitting evidence of the extraneous offense would result in unfair prejudice because the offense was so old that he could not adequately defend against it. However, after a hearing outside the presence of the jury in which the trial court heard the

8

testimony of both Ward and Appellant regarding the extraneous offense, the trial court found that the jury could find beyond a reasonable doubt that it occurred. Furthermore, there is no per se rule as to when an extraneous offense is too remote in time to be introduced in evidence. *Templin v. State*, 711 S.W.2d 30, 34 (Tex. Crim. App. 1986); *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.). The factors of remoteness and similarity are important, not in and of themselves, but only as they bear on the relevancy and probative value of the extraneous offense. *Plante*, 692 S.W.2d at 491. The period of time separating the extraneous offense from the primary offense is a factor to be considered, along with all other relevant factors. *Templin*, 711 S.W.2d at 34. Based on the facts of this case and the extraneous offense, we conclude that the extraneous offense is not so remote in time as to make it inadmissible to show intent in this case.

Finally, Appellant claims that the trial court erred by admitting the extraneous offense evidence over his Rule 403 objection. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Rule 403 favors admissibility, and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991). A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Although extraneous offenses always possess the potential to impress the jury of a defendant's character conformity, any impermissible inference of character conformity can be minimized through a limiting instruction. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996).

Keeping in mind the above standards, we examine whether the trial court abused its discretion in admitting the extraneous offense evidence. First, the evidence of Ward's shooting made Appellant's intent to kill Ramirez more probable and rebutted Appellant's theory that her shooting was accidental. Second, the trial court gave a limiting instruction in the jury charge, which served to minimize any impermissible inference of character conformity. *See id.* Third, the prosecutor used a minimal amount of time to develop evidence of the extraneous offense. Finally, although there was other evidence that might have established beyond a reasonable doubt Appellant's intent to commit murder—including Appellant's handwritten will and the

evidence of multiple gunshots—we cannot say that the State did not need the extraneous offense evidence to prove his intent to the jury beyond a reasonable doubt. Under these circumstances, we cannot conclude that the trial court abused its discretion in admitting the extraneous offense evidence.

Accordingly, we overrule Appellant's sixth issue as it relates to the admission of the extraneous offense evidence.

## FAILURE TO EXCUSE JUROR

In Appellant's fourth issue, he complains that the trial court erred by failing to excuse a juror who knew one of the witnesses.

When Barbara Ward took the stand during the State's rebuttal, a juror indicated that she needed to speak with the judge. Outside the presence of the other jurors, the juror told the trial court that fourteen years prior to that time, she had worked with Ward for five years. She stated that they had not associated outside of work, and that she was not familiar with any details of Ward's marriage relationships. The juror said that she believed Ward was a trustworthy person, but that she could nonetheless be fair and impartial and weigh Ward's testimony like that of any other witness.

Appellant made an objection to Ward's testimony and moved for a mistrial on the basis that he could not receive a fair trial because of the juror's relationship with Ward. The trial court overruled the objection and denied the motion for mistrial. The State expressed that it would not object to proceeding with eleven jurors if Appellant wished to agree to dismiss the juror. Appellant expressed no desire to dismiss the juror, and the trial resumed.

On appeal, Appellant does not argue that the juror was disqualified, but that the trial court erred by failing to excuse her based on the parties' agreement to proceed with eleven jurors as permitted by Article 36.29 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29(c) (West Supp. 2014). However, the record shows that although the State voiced it would not object to dismissing the juror, there was no such agreement of the parties. Accordingly, we overrule Appellant's fourth issue.

10

In Appellant's fifth issue, he argues that without his handwritten note and his statements to law enforcement, the evidence in this case would be legally and factually insufficient to support his conviction. We have previously concluded that the handwritten note and the statements to law enforcement were admissible. Therefore, we overrule Appellant's fifth issue.

## DENIAL OF MOTION FOR MISTRIAL

In part of his sixth issue, Appellant complains that the trial court erred by denying his motion for mistrial after a witness for the State mentioned the extraneous offense during cross examination.

**Standard of Review and Applicable Law**

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard, and its ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Generally, it is presumed that the jury can and will follow a court's curative instruction to disregard objectionable testimony. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). Mistrial is an extreme and exceedingly uncommon remedy that is appropriate only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Id.* Whether a particular error calls for a mistrial depends on the peculiar facts and circumstances of the case. *Hernandez v. State*, 805 S.W.2d 409, 413 (Tex. Crim. App. 1990).

**Analysis**

During defense counsel's cross examination of a detective who was involved in the case, the following exchange took place:

> DEFENSE COUNSEL: Do you ever recall another investigator in another report saying that *We went to talk to Jose Perez's daughter, who saw him, you know, three hours before the shooting*?
>
> DETECTIVE: I don't recall that, no.
>
> DEFENSE COUNSEL: Okay. Or *Jose Perez's first wife Dolores, who saw Jose three hours before the shooting*? Do you remember that at all in the investigation?
>
> DETECTIVE: That would be someone else's testimony. I don't know.
>
> DEFENSE COUNSEL: But you didn't see that in any reports that you –

DETECTIVE: I don't recall that I did. I remember that there was—there was talk of a prior incident. And the first information we had is that he had actually killed his first wife, but we found out that she had actually lived.

Defense counsel objected, asked that the testimony be stricken, and moved for a mistrial. The trial court denied the motion for mistrial but instructed the jury to disregard the testimony.

An inadvertent reference by a witness to an extraneous offense is generally cured by a prompt instruction to disregard. *See Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Here, the detective was apparently unaware that the "first wife" defense counsel was referring to was not the same ex-wife Appellant had shot. The trial court gave an instruction to disregard. Furthermore, evidence regarding the extraneous offense was presented in the State's rebuttal case, and we have held that the evidence was admissible. We conclude that the trial court did not abuse its discretion by denying the motion for mistrial. Accordingly, we overrule Appellant's sixth issue as it relates to the denial of his motion for mistrial.

## DISPOSITION

Having overruled Appellant's first, second, third, fourth, fifth, and sixth issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered May 29, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 29, 2015**

**NO. 12-14-00116-CR**

**JOSE DIAS PEREZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 2nd District Court
of Cherokee County, Texas (Tr.Ct.No. 18,373)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*